# EXHIBIT B

| RECORDING INFORMATION SHEET | ESSEX COUNTY REGISTER'S OFFICE<br>HALL OF RECORDS, ROOM 130<br>465 MARTIN LUTHER KING Jr. Blvd<br>NEWARK NJ 07102 |
|---|---|
| **INSTRUMENT NUMBER:**<br>11046558 | **DOCUMENT TYPE:**<br>**RELEASE OF MORTGAGE** |

**Official Use Only**

PHILIP THIGPEN, REGISTER
ESSEX COUNTY, NJ

INSTRUMENT NUMBER
11046558
RECORDED ON
June 27, 2011  01:11 pm
BOOK:12316  PAGE:8805

HB

**Return Address** *(for recorded documents)*
ARONSOHN WEINER AND SALERNO
263 MAIN STREET
HACKENSACK NJ 07601

| No. Of Pages *(excluding Summary Sheet)* | | 14 |
|---|---|---|
| Recording Fee *(excluding Transfer Tax)* | | $170.00 |
| Realty Transfer Tax | | $0.00 |
| Amount Charged | (Check # 3498) | $170.00 |
| Municipality | NEWARK | |
| Parcel Information | Block<br>Lot | |
| First Party Name | MARINERS BANK | |
| Second Party Name | ROSMAR INDUSTRIES LLC | |

**Additional Information (Official Use Only)**

MAIL COPY _____
NO COPY _____
ENVELOPE _____

ADDITIONAL STAMPINGS _____

*************************** *DO NOT REMOVE THIS PAGE.* ******************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY FILING RECORD*
******************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ********************

ROSMAR INDUSTRIES, L.L.C.
A New Jersey Limited Liability Company
Mortgagor/Borrower

WITH

MARINER'S BANK, Mortgagee/Lender

MODIFICATION AND FOREBEARANCE AGREEMENT

Dated as of: April 30, 2011

**ADDRESS**:

474-476 Irvine Turner Boulevard
Newark, New Jersey

**RECORD AND RETURN TO**:
ARONSOHN WEINER AND SALERNO
263 Main Street
Hackensack, New Jersey 07601

1

## MODIFICATION AND FOREBEARANCE AGREEMENT

**THIS MODIFICATION AGREEMENT** (this "Agreement") is made effective this 30th day of April, 2011 (the "Effective Date"), by and between **ROSMAR INDUSTRIES, L.L.C.**, a New Jersey limited liability company, having an address of P.O. Box 1009, East Orange, New Jersey 07109 (the "Borrower"), and **MARINER'S BANK,** whose address is 935 River Road, Edgewater, New Jersey, 07020 (the "Lender").

### RECITALS

WHEREAS, the Lender extended a certain credit facility to the Borrower on July 2, 2007, in the original principal sum of Eight Hundred Thousand ($800,000.00) Dollars (the "Loan"); and

WHEREAS, the Loan is governed by a Term Loan Agreement dated May 18, 2007 between the Borrower and the Lender (the "Loan Agreement"); and

WHEREAS, the Borrower as Maker, executed a Promissory Note (the "Note") dated July 2, 2007, in the original principal sum of Eight Hundred Thousand ($800,000.00) Dollars, in favor of the Lender, as Holder; and

WHEREAS, the payment of the Note is secured by: 1) a Mortgage (the "Mortgage"), dated July 2, 2007, recorded July 12, 2007 in Book 12070, Page 5397, in the County Register's office of Essex County, covering Block 2702 Lot 7 commonly known as 474-476 Irvine Turner Boulevard, Newark, New Jersey (the "Secured Property"); 2) an absolute assignment of Leases and Rentals, dated July 2, 2007 from Debtor to Secured Party (the "Assignment of Leases"); and

WHEREAS, Payment of the Note is unconditionally guaranteed pursuant to the terms of certain Agreements of Guaranty dated July 2, 2007 (each individually a "Guaranty" and collectively, the "Guarantees") by Albania Martinez, Jose Rosario, Jose B. Martinez and Roselies Rosario; and

WHEREAS, the Loan Agreement, Note, Mortgage, UCC's, Guarantees and any and all other documents executed in connection with the Loan are hereinafter collectively referred to as the "Loan Documents"; and

WHEREAS, on December 16, 2010, the Lender commenced an action in the Bergen County Superior Court Law Division under Docket No. L. 012122-10 (the "Law Division Action" against the Borrower and the Guarantors alleging a default of the Note and seeking damages in connection therewith; and

WHEREAS, on January 24, 2011, the Lender commenced an action in Foreclosure in the Essex County Court, Chancery Division, under Docket No. F-000459-11 (the "Foreclosure Action"); and

**WHEREAS,** the Lender has been required to make additional advances through the life of the loan on 08/01/2008 in the amount of $9,798.06 for unpaid taxes and water/sewer, 06/12/2009 in the amount of $6,505.39 for unpaid taxes and once again on 10/25/2010 in the amount of $9,586.56 for unpaid taxes; and

**WHEREAS,** the Borrower, Lender and Guarantors acknowledge that the Loan is currently in default and as of the date of this Agreement there is an unpaid principal balance due as of April 1, 2011 on the Note and Mortgage of Eight Hundred Ninety Thousand Three Hundred Twenty Seven Dollars and Fifty One Cents ($.890,327.51) (the "Principal Balance"), which includes additional advances made by the Lender of $6,161.83 for unpaid taxes, unpaid interest of $54,250.25, , legal fees of $8,000; and $12,845.74 for unpaid utilities which amounts have been added to the principal loan balance in accordance with Section 1.21 of the Mortgage; and

**WHEREAS,** Lender has agreed to conditionally waive late charges of $6264.90 provided the Borrower fully complies with all conditions hereof; and

**WHEREAS,** as security for all of the Borrower's obligations under this Agreement and the Loan Documents, the Borrower has agreed to deliver this Agreement and to pledge, assign and hypothecate to the Lender, to be held in escrow by the law firm of Aronsohn, Weiner & Salerno, P.C. (the "Escrow Agent") as hereinafter set forth, a Deed in Lieu of Foreclosure (the "Deed") conveying all of the Borrower's interest in the Secured Property referred to the Lender; and.

**WHEREAS,** the Borrower, Guarantors, and the Lender now desire, as set forth below, to modify the terms and conditions of the Note, the Mortgage and the Loan Documents as set forth at length herein;

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained, the Borrower, the Guarantors, and the Lender hereby agree as follows:

1. . Additional Advances and New Principal Amount. The Lender has advanced additional sums for taxes, unpaid utilities and counsel fees as set forth above. Pursuant to the terms of the Note and the Mortgage, the Borrower and Guarantors consent to adding these advances plus all past due interest, unpaid late fees and legal fees as set forth hereinabove to the unpaid principal amount due hereunder. The Borrower and Guarantors hereby acknowledge, confirm, ratify and agree that the Principal Balance due hereunder is Eight Hundred Ninety Thousand Three Hundred Twenty Seven Dollars and Fifty One Cents ($890,327.51).

2. Interest Rate. The interest rate applicable to the Note shall be modified to 5.75% for the remainder of the term.

3. <u>Payments of Interest Only and Taxes.</u> Commencing on May 1, 2011, and payable on the 1st day of each and every month thereafter until the Maturity Date of the Loan. the Borrower shall make estimated monthly payments of $5,035.36 to the Lender representing interest only on the Principal Balance of $4,408.36 and $627.00 for one twelfth of the annual real estate taxes due on the Secured Property. Upon execution of this Agreement the Borrower shall immediately open a depository account with the Lender and shall deposit all rents collected into the account. The Borrower shall execute an auto debit form, which permits the Lender to withdraw the payments due hereunder from said depository account. In addition, the Borrower shall provide the Lender with a written monthly report on the 15th day of each month commencing on June15, 2011, certifying as to the status of each rental payment due in connection with the Secured Property.

4. <u>Maturity Date of the Note.</u> The Borrower and the Lender agree that the entire unpaid principal balance shall become due and payable, including accrued interest, if any, in full, on January 1, 2012 (the "Maturity Date"). On the Maturity Date, provided the Borrower has fully complied with all terms and conditions hereof and there have been no defaults of default whatsoever, than the Lender shall extend the Maturity Date of the Loan until January 1, 2015. The interest rate for the extended term shall be 5.75% and Borrower shall pay monthly payments of principal and interest based upon a 20-year amortization schedule.

5. <u>Deed in Lieu of Foreclosure.</u> As security for all of the Borrower's obligations under this Agreement and the Loan Documents, the Borrower has agreed to deliver and to pledge, assign and hypothecate to the Lender, to be held in escrow as hereinafter set forth, a Deed in Lieu of Foreclosure (the "Deed") conveying all of the Borrower's interest in the Secured Property to the Lender. **The Borrower expressly waives the right of redemption and any and all defenses or objections to the filing of the Deed In Lieu of Foreclosure in the event of a default hereunder.** Lender shall have no obligation or liability whatsoever under the Deed, or for the obligations of Borrower, by reason of or arising out of the making of this Agreement, nor shall Lender be required or obligated in any manner to perform or fulfill any of the obligations of Borrower under or pursuant to the Deed or related to the Secured Property. Nothing contained in this Agreement shall be construed or interpreted (i) to transfer to Lender any of the rights and obligations of a Landlord or Tenant other than the rights of collateral security in and to the Deed, or (ii) to constitute Lender as a Landlord or Tenant provided that such limitation, in no manner, shall otherwise limit the rights of Lender granted under this Agreement. This Agreement (i) shall not be deemed to terminate Borrower's status as the Tenant or Landlord, and (ii) shall not be construed as constituting a current conveyance. Lender shall not be liable for failure to collect or realize upon the Loan to the Borrower or any collateral security or guarantee therefor, or any part thereof, or for any delay in so doing, nor shall Lender be under any obligation to take any action whatsoever with regard thereto. If an Event of Default has occurred under this Agreement or any of the Loan Documents and is continuing beyond any applicable cure period, the Deed held by Escrow Agent hereunder, at the election and written request of Lender, shall be filed and registered in the name of Lender, or its nominee, and Lender or its nominee may at any time after any of the Obligations have been declared due and payable, upon notice to Borrower, exercise all rights of Borrower and all rights or privileges pertaining to the Secured Property as if it were

absolute owner thereof, all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any of the aforesaid rights, privileges or options and shall not be responsible for any failure to do so or delay in so doing.

      6. <u>No Further Encumbrances</u>. Borrower agrees that it shall not create or permit to exist any interest, lien, charge or encumbrance in or on the Secured Property beyond that already disclosed to the Lender as set forth in the Foreclosure complaint filed herein. Borrower agrees to pay or discharge of record all liens and claims for labor performed and material and services furnished in connection with the Secured Property, and to use its best efforts to prevent the assertion of claims or liens against the Secured Property, Borrower shall, within twenty (20) days after the notice of the filing of any such lien or contested claim against the Secured Property discharge same of record or the Lender shall otherwise be permitted to deem the Borrower in default and proceed in accordance with all rights created in paragraph 5 hereinabove.

      7.    Events of Default:. The following events shall constitute an "<u>Event of Default</u>" hereunder: (i) failure to make any payment due in accordance with Paragraph 3 hereinabove which is not cured within 30 days after written notice of said default; (ii) any non monetary default under this Agreement or any other Loan Document which continues for a period of thirty (30) days after written notice to Borrower, or (iii) an event of default under any other loan document delivered by Borrower in connection with the Loan which is not cured in accordance with the cure provisions, if any, set forth therein. The Notice of default shall be deemed effective upon mailing by regular and certified mail to the Borrower at the address provided hereinabove with a copy faxed to the Borrower's counsel, Edward S. Seradzky.

      7.1 <u>Remedies.</u> Upon the occurrence of an Event of Default and the failure to cure within the applicable period noted in this Agreement, the Escrow Agent is authorized to deliver the Deed who may, take possession of the Secured Property and may without notice to or assent of Borrower, without demand of performance or other demand or advertisement to or upon Borrower or any other person (all and each of which demands, advertisements and/or notices are expressly waived, to the extent permitted by applicable law), forthwith hold, collect, receive, appropriate and realize rent upon the Secured Property or any part thereof or profits therefrom, and/or may forthwith sell, assign, give option or options to purchase, contract to sell or otherwise dispose of and deliver the Secured Property or any part thereof, at public or private sale or sales, in a commercially reasonable manner, upon such terms and conditions as it may deem commercially advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk, with the right to Lender or Lender's nominee upon any such sale or sales, public or private, to purchase the whole or any part of said Secured Property free from all rights of redemption, stay and/or appraisal which the Borrower may now have or may at any time in the future have under any rule of law or statute now existing or hereafter enacted, which, to the extent permitted by law, is hereby waived and released by Borrower effective on the tenth (10th) day following Borrower's receipt of notice of such sale (as hereafter provided). In case of any sale, the Lender may first deduct all expenses of collection, sale and delivery of the Secured Property sold and any expenses incidental thereto including, but not limited to, reasonable attorneys' fees and disbursements, sales commissions, transfer fees and

taxes, and may then hold or apply the residue to the payment of the Loan and shall return the surplus, if any, to the Borrower, its successors or assigns, or as a court of competent jurisdiction may direct. Any sale conducted upon the foregoing terms or by any method of sale shall be deemed commercially reasonable. The Borrower agrees that the Lender shall have the right to continue to retain the Secured Property until such time as a reasonably advantageous price can be obtained for the Secured Property and, absent gross negligence, the Lender shall not be liable for any loss in the value of the security by reason of any such retention of the Deed by the Lender. If any consent, approval or authorization by any federal, state, local or other governmental authority, department or agency should be necessary to effect any sale or other disposition of the Lender, the Borrower agrees to execute such applications and other instruments as may be required in connection with securing any such consent, approval or authorization, and will use its best efforts to secure the same.

7.2  **Security Agreement, Uniform Commercial Code Filings and Mortgage.** The Borrower acknowledges that the security interest granted and created in the Mortgage and perfected as evidenced by the filing of the Uniform Commercial Code Financing Statements, as well as the security interest granted and created in the Mortgage shall remain in full force and effect against the Secured Property (both real and personal) covered thereby until the unpaid balance of the indebtedness represented by the Note, as modified herein, together with all interest thereon, as provided to be paid herein, is fully and finally paid together with any other liability or obligation of the Borrower to the Lender.

8. **Security Agreement, Uniform Commercial Code Filings and Mortgage.** The Borrower acknowledges that the security interest granted and created in the Mortgage and perfected as evidenced by the filing of the Uniform Commercial Code Financing Statements, as well as the security interest granted and created in the Mortgage shall remain in full force and effect against the Secured Property (both real and personal) covered thereby until the unpaid balance of the indebtedness represented by the Note, as modified herein, together with all interest thereon, as provided to be paid herein, is fully and finally paid together with any other liability or obligation of the Borrower to the Lender.

9. **No Change in Force or Effect of Note and Mortgage.** The Lender agrees to the modification of the terms of the Note, the Mortgage, and the Loan Agreement to the extent set forth in this Agreement, but only on the condition that the terms and conditions of the Agreement shall not, in any way, prejudice any present or future rights, remedies, benefits or powers belonging or accruing to the Lender under the terms of the Loan Documents as amended by this Agreement. All terms and conditions of the Loan Documents, except as herein modified, shall be and are hereby reaffirmed. This Agreement shall in no way be interpreted or construed as a release or extinguishment of any part of the indebtedness evidenced by the Note, and nothing contained herein shall in any manner diminish or impair the rights, title, powers, liens and equities which the Lender or any other holder of the Note may have under the terms of the Mortgage, and any of the Loan Documents securing payment of the indebtedness evidenced by the Note.

10. <u>Guarantor Confirmation.</u> Each of the Guarantors acknowledges and agrees that: (1) the Note remains in full force and effect; and (2) the Guaranty and their obligations thereunder extend to (A) payment of the full principal amount of $890,327.51 and all interest accruing on the unpaid balance, (B) performance of all of the Borrower's obligations now or hereafter owed to Lender. The Guaranty, as amended by this Agreement, constitutes a joint and several, unconditional guaranty of payment and not merely a guaranty of collection. GUARANTORS acknowledge that each is individually responsible and liable for full payment and performance of the obligations under the Guaranty as amended by this Agreement. GUARANTORS acknowledge that they have no offsets, counterclaims or defenses to their obligations under the Guaranty.

11. <u>Release of Liability and Claims</u>. The undersigned Borrower and the Guarantors do hereby remise, release and forever discharge the Lender, its parent and affiliated companies, and all of its and their respective officers, directors, officials, employees, agents, attorneys and stockholders (collectively, the "Releasees") of and from any and all actions, claims, demands, and causes of action, whatsoever, in law or in equity, against the Releasees, or any of them, that the Borrower and the Guarantors or their successors or assigns ever had, now have, or may hereafter have for, upon, or by reason of any matter, cause or thing from the beginning of the world to the Effective Date of this Agreement, including, but not limited to, any and all claims relating to the Loan, as for any other documents related to the Loan, and any written or oral agreement(s) between the Borrower, the Guarantors and related to the Loan, including but not limited to this Agreement.

12. <u>Attachment to the Note.</u> The Borrower and the Lender agree to attach the original of this Agreement to the original Note, and this Agreement, when duly executed by all parties, shall constitute a "Modification" of the Note.

13. <u>No Further Modification.</u> Except as expressly provided otherwise in this Agreement, the Note, the Mortgage, the Loan Agreement, and the Loan Documents shall remain otherwise unaffected, unchanged, and unimpaired by reason of the terms and conditions of this Agreement.

14. <u>Escrow Agent.</u> The terms of the Escrow Agreement shall be self-executing and no further writings or authorizations shall be required for the Escrow Agent to act. The acceptance by Escrow Agent of its duties under this <u>Section 14</u> is expressly subject to the following terms and conditions, which the parties to this Agreement agree shall govern and control with respect to Escrow Agent's rights, duties, liabilities and immunities:

(i) Escrow Agent is not responsible for the validity or sufficiency of any representations or warranties made, or, obligations assumed by, any other Party to this Agreement.

(ii) Escrow Agent has no duty or responsibility to make any inquiry or investigation as to the accuracy or adequacy, and is entitled to assume conclusively the correctness and completeness, of any and all information given in any certification statement or other paper received by Escrow Agent under this Agreement. Escrow Agent shall be protected in acting upon any notice, request, certificate, approval statement, consent or other

paper believed by Escrow Agent to be genuine and to have been signed by the proper Party or Parties.

(iii) The duties of the Escrow Agent shall be self-executing and shall be determined slowly by the express provisions of this Agreement. Escrow Agent will not be liable for any error of judgment, or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for any thing which it may do or refrain from doing in connection herewith, excepting only its own gross negligence or intentional and deliberate misconduct.

(vi) Escrow Agent may consult with and obtain advice from counsel of its own choice in the event of any question as to any of the provisions hereof, or its duties hereunder. The advice and opinion of such counsel shall be deemed to be full and complete authorization by Seller and Purchaser to the Escrow Agent to act in accordance therewith. Escrow Agent shall incur no liability whatsoever and shall be fully protected when acting in good faith in accordance with the opinion and advice of such counsel. Pledgor and shall be jointly and severally liable hereunder, for all losses, costs and fees incurred by Escrow Agent for such counsel, actions taken in reliance thereon, and any proceeding resulting there from.

(vii) In the event of any disagreement between any or all of the Parties to this Agreement, or between them or any one of them, and by other person(s), resulting in adverse claims or demands being made in connection with the subject matter of this Agreement or in the event that Escrow Agent in good faith is in doubt as to what action it should take hereunder, then Escrow Agent may, at its option, refuse to comply with any claims or demands upon it, or refuse to take any other action hereunder, so long as any such disagreement, claim, demand or uncertainty continue or exists, and in any such event Escrow Agent shall not be or become liable in any way to any person for its failure to act.

(viii) Each of the other Parties hereto jointly and severally agrees to defend, indemnify and hold Escrow Agent harmless from and against any and all claims, actions, judgments losses, liabilities, obligation, damages, charges, costs, and expenses of any nature whatsoever, including without limitation, attorney's fees and expenses incurred in any litigation by or against any of the parties to this Agreement under this Paragraph, arising directly or indirectly from, out of or incident to this Agreement, excepting only those accruing as a result of Escrow Agent's own gross negligence or intentional and deliver misconduct

(ix) The Borrower consents to the Escrow Agent's representation of the Lender in the event of any litigation arising hereunder and waives any objection thereto.

15. <u>Default Rate.</u> Upon the occurrence of any event of default as defined hereunder, the new interest rate set forth in Paragraph 2 herein shall be deemed null and void, and the Default Rate as defined in the Note and Mortgage shall be applicable.

16. <u>Conflict.</u> When the terms and provisions contained in the Note, the Mortgage and Security Agreement, the Loan Agreement, or the Loan Documents in any way conflict with the terms and provisions contained in this Agreement, the terms and provisions contained herein contained shall prevail.

17. <u>Borrower and Guarantors Confirmation.</u> The undersigned Borrower and Guarantors of the Note hereby acknowledge and confirm to the Lender that, as of the date hereof, the Note, as modified hereby is a valid obligation of the Borrower, enforceable in accordance with its terms without any defense or offset, and the Guarantors by execution hereof, consent to the modification of the Note, the Mortgage and Security Agreement, and the Loan Agreement as set forth herein and confirm that their obligation for the payment of the indebtedness evidenced by the Note, as modified by this Agreement, shall continue in full force and effect, and that there are no offsets or defenses thereto.

18. <u>Binding Effect.</u> This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties to this Agreement.

19. <u>Dismissal of Actions.</u> Upon execution of this Agreement and payment of the first payment required hereunder, the Lender shall cause the Law Division Action and the Foreclosure Action to be dismissed without prejudice.

20. <u>Attorneys Fees and Costs of Collection.</u> The Borrower shall reimburse the Lender for all attorneys' fees and costs of collection incurred in connection herewith which sum shall be added to the principal amount due on the Maturity Date or upon acceleration.

21. <u>Miscellaneous</u>.

(a) The rights, powers and remedies of Lender provided in this Agreement and the other Loan Documents are cumulative and not exclusive of any right, power or remedy provided by law or equity, and no failure or delay on the part of Lender in the exercise of any right, power, or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or remedy preclude other or further exercise thereof, or the exercise of any other right, power or remedy. Furthermore, the Lender's exercise of the provisions of Paragraph 5 shall not preclude the Lender from exercising all other rights afforded under the Loan Documents

(b) This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same Agreement. This Agreement shall be deemed to have been executed and delivered when Lender has received counterparts hereof executed by all parties listed on the signature page(s) hereto.

(c) This Agreement shall be construed in accordance with and governed by the internal laws, and not the law of conflicts, of the State of New Jersey.

(d) This Agreement and the Loan Documents constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

(e) No amendment of this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto.

(f) The Obligations of the Borrower and the Guarantors shall be joint and several and the word "Borrower' and Guarantor's means each of them, any of them and/or all of them.

(g) The Borrower and Guarantors expressly consent to the jurisdiction of the Essex County Superior Court in connection with any and all disputes arising out of this Agreement or any of the Loan Documents.

(h) Borrower further agrees that, at any time and from time to time, upon written request of Lender, Borrower will execute and deliver such further documents and do such further acts and things as Lender may reasonably request in order to effect the purposes of this Agreement, including, without limitation, the pledging of any substituted collateral, the pledging of any notes or other instrument evidencing the Deed and the filing of any financing or continuation statement without the signature of Borrower, to the extent permitted by law.

**{Signature pages to Follow)**

|  | "BORROWER": |
|---|---|
| WITNESS/ATTEST: | ROSMAR INDUSTRIES, L.L.C.<br>A New Jersey Limited Liability Company |
| _____<br>Edward S. Seradzky | By: _____<br>    Jose B. Martinez,<br>    Managing Member |
| WITNESS | "GUARANTORS": |
| _____<br>Edward S. Seradzky | By: _____<br>    Albania Martinez |
| WITNESS | |
| _____<br>Edward S. Seradzky | By: _____<br>    Jose B. Martinez |
| WITNESS: | |
| _____<br>Edward S. Seradzky | By: _____<br>    Jose Rosario |
| WITNESS: | |
| _____<br>Edward S. Seradzky | By: _____<br>    Roselies Rosario |
| WITNESS: | MARINER'S BANK, Lender |
| _____<br>Gerald R. Salerno | By: _____<br>    Robert L. Cusick, Vice President,<br>    Commercial Lending |

11

STATE OF NEW JERSEY        )
                           ) ss.
COUNTY OF BERGEN           )

    On this, the 19th day of May, 2011 before me, personally appeared Jose B. Martinez, who acknowledged himself to be the Managing Member of **ROSMAR INDUSTRIES, L.L.C.**, New Jersey limited liability company, the limited liability company named herein, and that they, as such being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the company, signed, sealed and delivered by them as the Co-Presidents of the Company and is the voluntary act and deed of the company made by virtue of the authority from its members.
    In Witness Whereof, I hereunto set my hand.

_____
Edward S. Seradzky, Esq.
An Attorney at Law of New Jersey

STATE OF NEW JERSEY        )
                           ) ss.
COUNTY OF BERGEN           )

BE IT REMEMBERED that on this 19th day of May, 2011, before me, the subscriber, personally appeared Albania Martinez, who, I am satisfied, is the person named in and who executed the within instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the purposes therein expressed.

_____
Edward S. Seradzky, Esq.
An Attorney at Law of New Jersey

STATE OF NEW JERSEY        )
                           ) ss.
COUNTY OF BERGEN           )

BE IT REMEMBERED that on this 19th day of May, 2011, before me, the subscriber, personally appeared Jose B. Martinez, who, I am satisfied, is the person named in and who executed the within instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the purposes therein expressed.

_____
Edward S. Seradzky, Esq.
An Attorney at Law of New Jersey

STATE OF NEW JERSEY    )
                                    ) ss.
COUNTY OF BERGEN     )

BE IT REMEMBERED that on this 19th day of May, 2011, before me, the subscriber, personally appeared Jose Rosario, who, I am satisfied, is the person named in and who executed the within instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the purposes therein expressed.

                                                 Edward S. Seradzky, Esq.
                                                 An Attorney at Law of New Jersey


STATE OF NEW JERSEY    )
                                    ) ss.
COUNTY OF BERGEN     )

BE IT REMEMBERED that on this 19th day of May, 2011, before me, the subscriber, personally appeared Roselies Rosario, who, I am satisfied, is the person named in and who executed the within instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the purposes therein expressed.

                                                 Edward S. Seradzky, Esq.
                                                 An Attorney at Law of New Jersey


STATE OF NEW JERSEY  )
                                  ) ss.
COUNTY OF BERGEN   )

    BE IT REMEMBERED, that on this 19th day of May, 2011, before me, a Notary Public of the State of New Jersey, personally appeared, Robert L. Cusick, Vice President of Mariner's Bank, who I am satisfied is the person who signed the within instrument, on behalf of said corporation, and I having first made known to him the contents thereof he acknowledged that he signed, sealed with the corporate seal and delivered the same as such officer aforesaid, and that the within instrument is the voluntary act and deed of such corporation, made by virtue of authority from its Board of Directors.
    Witnesseth my hand and seal.

                                                 Gerald R. Salerno, Esq.
                                                 An Attorney at Law of New Jersey

SCHEDULE A

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Newark, County of Essex, State of New Jersey:

BEGINNING on the West side of Irvine Turner Boulevard (formerly known as Belmont Avenue) at a point distant 158.87 feet South from the southwest corner of Bigelow Street and Irvine Turner Boulevard; thence

(1) Running South along Irvine Turner Boulevard 33.63 feet; thence

(2) West and parallel with Bigelow Street 135 feet; thence

(3) North and parallel with Irvine Turner Boulevard 33.63 feet; thence

(4) East and parallel with Bigelow Street 135 feet to the point and place of BEGINNING.

NOTE: Shown and designated as Block 2702, Tax Lot(s) 7, on the current and official tax map of the City of Newark, County of Essex, State of New Jersey.